WILLIAM SHELDON *against* JEMIMA SHELDON AND OTHERS,
*Executors of* JOSEPH SHELDON, *deceased.*

Where A.
confesses a
judgment to B,
and B, cove-
nants to sell the
property of A,
under that judg-
ment, and apply
a sufficiency of
the proceeds to
the payment of
A's debts; and
account with
him for the re-
mainder, B. may
himself become
a purchaser at a
sale under an
execution issu-
ed on such judg-
ment; for the
legal and equi-
table title in the
property re-
maining in A.
until the sale,
B is not a trus-
tee as to that
property; nor
is B accounta-
ble to A. beyond
the sum for
which the pro-
perty was sold
to him.

THIS was an action of covenant, which was tried at the *Alba-
ny* circuit, in *April*, 1815, before Mr. Justice *Platt.*

The action was founded on the following instrument, under
seal, executed by the defendants' testator: "Whereas, *William
Sheldon* is indebted to me in the sum of one hundred and twenty-
five dollars, and whereas the said *William* hath this day duly
executed to me a bond, and warrant of attorney to confess judg-
ment thereon, which bond is in the penal sum of eight thousand
dollars, conditioned for the payment of four thousand dollars;
and whereas it is agreed that under that judgment I shall sell all
the real and personal property of the said *William, and apply a
sufficiency of the moneys arising therefrom to the payment of all
his honest debts, and account with him the said William for the
remainder thereof:* Know, therefore, all men by these presents,
that I the said *Joseph* do covenant, promise, and agree to and
with the said *William*, that I will well and faithfully, on my part,
keep and perform the before-recited agreement; and to insure a
faithful performance thereof, I bind myself, my heirs, executors,
and administrators, and each and every of them, in the penal
sum of four thousand dollars, to him the said *William*, his heirs,
executors, administrators, and assigns. In witness," &c. The
breaches specially assigned on this covenant were, that the de-
fendants' testator had not applied a sufficiency of the money
arising from the sale of the plaintiff's estate to the payment of
his honest debts; and that the testator, or his executors, had not
accounted with the plaintiff for the money arising from the sale
of the plaintiff's real and personal property remaining in their
possession after paying all his honest debts.

Judgment was duly entered on the bond and warrant of at-
torney, mentioned in the covenant, and an execution being issued
thereon to the sheriff of *Rensselaer*, the property of the plaintiff,
which was all situated in that county, was sold fairly, and with-
out collusion, to the defendants' testator, as the highest bidder,
for about the sum of 1,200 dollars; and the testator paid the
honest debts of the plaintiff to more than 1,500 dollars. The

plaintiff offered to prove that at the time of the execution of the covenant, and of entering the judgment, the plaintiff owned property of the value of 4,000 dollars; but the evidence was objected to on the ground that the only proper inquiry was for what the property sold under the execution, and the judge being of that opinion rejected it. The plaintiff next offered to prove, that the testator, after the purchase at the sheriff's sale, had sold part of the property at a much higher rate than he gave for it, with the proceeds of which he had paid the honest debts of the plaintiff above mentioned, but the judge ruled that the testator was not bound to account to the plaintiff beyond the amount for which the property sold under the execution. The plaintiff submitted to a nonsuit, with leave to move the court to set it aside, and grant a new trial.

*S. A. Foot*, for the plaintiff, contended, that the defendants' testator, being a trustee, could not, himself, become a purchaser. It is a settled principle in equity, that if a trustee become a purchaser of the trust estate, the *cestuy que trust* has a right to set aside the sale, and have the property resold. Should it be said that this was a *judicial* sale, it may be answered that the trustee cannot avail himself of the benefit of such sale, for he can derive no profit or advantage whatever from his trust; and if it is for the interest of the *cestuy que trust*, a court will always avoid the sale.*

The only question is, whether the plaintiff can avail himself of this principle in a court of law? The testator, by his covenant, stipulated to perform certain duties as a trustee, and he is here called upon to answer for a breach of that covenant, or, in other words, for a violation of his trust. In a court of equity the *cestuy que trust* might either set aside the sale, or call on the trustee to account for the profits. Now, the trustee, in this case, has purchased, for 1,500 dollars, property worth 4,000 dollars, and he is called on to account, or pay the difference. The inquiry, as to the value of the property, at the trial, was, in this view, proper.

*Bliss*, contra, contended, that by declaring for a breach of the covenant, in this case, the plaintiff affirmed the sale. This is distinguishable from the ordinary case of a sale and purchase by a trustee. No third person was ever interposed in this case. It

NEW YORK,
May, 1816.

SHELDON
v
SHELDON'S
EXECUTORS.

* *Campbell* v. *Walker*, 5 *Vesey*, 678. *Whichcote* v. *Lawrence*, 3 *Vesey*, 740 13 *Vesey*, 600.

NEWYORK,
May 1816.

SHELDON
v.
SHELDON'S
EXECUTORS.
* 11 Johns. Rep.
446
† 1 Cruise's Dig.
551, 552.

was a *judicial* sale, by the sheriff, the public law officer, so that all idea of collusion or fraud is excluded. Indeed, the parties, by their contract, contemplated a sale by a sheriff. In *Jackson*, *ex dem. Gillespie*, v. *Woolsey*,* the court said that a guardian, *at litem*, might purchase the estate of the infant, sold by the commissioners for making partition. And in *Davison* v. *Gardner*,† Lord *Hardwicke* said, a trustee might purchase at open sale, at auction, before the master.(*a*)

    THOMPSON, Ch. J., delivered the opinion of the court. The first question which arises upon the motion to set aside the non-suit granted in this case is, whether the testator, *Joseph Sheldon*, could legally purchase the property sold under the execution, in his favour, against the plaintiff in this cause. The objection which has been urged against this right is, that he was a trustee for the plaintiff, of the property sold, and, therefore, disqualified from becoming a purchaser. It would be a sufficient answer to this objection, that it forms no part of the breaches assigned in the declaration. But it is not true, in point of fact, that the testator stood in the character of trustee to the plaintiff. Neither the legal nor equitable title to the property was transferred to him. It remained entirely in the plaintiff, and was under

---

(*a*) This is a manuscript case, decided *July* 21, 1743. The position of Lord *Hardwicke* is not supported by subsequent adjudications, nor by the reason and policy of the general rule relative to the incapacity of a trustee to purchase the trust estate. It does not depend on the sale being public or private, or whether it is advantageous or not to the trustee. The principle rests on a deeper and broader foundation. It is the danger of temptation from the facility and advantages afforded by the situation, that creates the disability. " The wise policy of the law," say the learned counsel, in the case of the *York Buildings* v. *M'Kenzie*, (8 *Bro. P. C.* 63 , *Appen.* 1.,) " has, therefore, put the sting of disability into the temptation, as a defensive weapon against the strength of the danger, which lies in that situation." See, also, *Ex parte James*, (8 *Vesey*, 343 ) " No trustee," says Lord *Eldon*, in *Ex parte Lacey*, (6 *Vesey*, jun., 625. n.,) " shall buy the trust property, until he strips himself of that character, or, by *universal consent*, has acquired a ground for becoming a purchaser." And in the case *Ex parte Bennet*, (10 *Vesey*, 385 ,) he again observes, that " if a trustee can buy in an honest case, he may in a case having that appearance, but which, from the infirmity of human testimony, may be grossly otherwise." (See, also, *Whichcote* v. *Lawrence*, 3 *Vesey*, 740 *Campbell* v. *Walker*, 5 *Vesey*, jun., 678. *Sugden's Law of Vend* , (2d. edition,) 391—401. 1 *Maddocks' Chan.* 91—93.) This subject was discussed in the case of *Bergen and others* v. *Bennet*, (1 *Caines' Cases in Error*, 1—21.,) and *Kent*, J., who delivered the opinion of the court of errors, says, " It is a sound and established rule of equitable policy, that a trustee cannot himself be a purchaser of the trust estate, without leave from chancery ; and the reason of the rule is, to bar the more effectually every avenue to fraud. This rule was recognised by this court in the cause of *Munroe and others* v. *Allaire*." (1796 ) And, after taking notice of some distinctions taken in that case, he says, " admitting the rule to be absolute and universal, still it is agreed that the *cestuy que trust* must come in a reasonable time to set aside the sale, or he will not be heard." (See, also, *Manning* v. *Manning*, (1 *Johns Chan. Rep.* 533.) So Lord *Loughborough*, in *Whichcote* v. *Lawrence*, and Lord *Alvanley*, in *Campbell* v. *Walker*, without considering the purchase by a trustee as, *ipso jure*, void, say, that he always purchases subject to the equity of having the sale set aside, if the *cestuy que trust*, in a reasonable time, choose to say he is not satisfied with it.

his absolute control until the sale made under the execution. The testator only covenanted that he would sell the property under the execution, to be issued upon the judgment confessed, and apply a sufficiency of the money arising therefrom to the payment of the plaintiff's honest debts, and account to him for the remainder. Under such circumstances there could be no possible objection to the testator's becoming a purchaser, at a public sale made by the sheriff. And, indeed, it may well be questioned, whether the rule applies at all to such public sales, there being no chance of practising any fraud upon the *cestuy que trust*, by purchasing the property under its real value. (11 *Johns. Rep.* 455.) But the rule itself is not as broad as was contended for by the plaintiff's counsel. In *Whichcote* v. *Lawrence*, (3 *Ves.* jun. 750.,) the Lord Chancellor says, the rule is laid down, not very correctly, in most cases where you find it. It is stated as a proposition, that a trustee cannot buy of the *cestuy que trust;* certainly, says he, that naked proposition is not correctly true; the real sense of the proposition is not that the sale is, *ipso jure*, null, but that he who undertakes to act for another, in any matter, shall not, in the same matter, act for himself. Therefore, a trustee to sell, shall not gain *any advantage* by being himself the person to buy. And, in *Davison* v. *Gardner*, (cited 1 *Cruise*, 551.,) Lord *Hardwicke* said, the court of chancery will not suffer a trustee to purchase the estate of the *cestuy que trust*, during his minority, though the transaction be fair and honest; but that the rule against trustees purchasing did not extend to trusts for persons of full age. And where there is a decree for sale of the *cestuy que trust's* estate, and an open bidding before the master, then the court has permitted the trustee to purchase; for that is an open auction of the estate.

The next question is, whether the testator was bound to account to the plaintiff for more than the amount produced by the auction sale. The decision of this point is, necessarily, involved in the answer given to the first question. For, if the testator might legally become a purchaser at the auction, the avails of the sale thus made must be the amount for which the testator was accountable; and the plaintiff can surely have no reason to complain of such sale, as it was made according to his own agreement and stipulation. The

NEW YORK,
May, 1816.

covenant upon which the present action is founded provides, that the real and personal estate of the plaintiff should be sold under the judgment; and if that was a fair, *bona fide* sale, which, indeed, has not been at all questioned, there can be no ground for calling on the defendants to account for more than the avails of such sale. And the case shows, that the testator did apply such avails to the payment of the plaintiff's debts, as by the covenant he was authorized and required to do. There has, therefore, been no breach of the covenant, and the plaintiff was properly nonsuited. The motion must, accordingly, be denied.

